## (March 20, 1969)

■ ROSE MILLIKEN, Respondent, v. ELEANORE MARTINETTI et al., Appellants.— Judgment in favor of plaintiff affirmed, with $50 costs and disbursements to the plaintiff. We agree fully with the findings and conclusions as stated in the opinion of the trial court. Inasmuch as it is found that the "corporations were mere instruments adopted by the individual defendants to effectuate their purpose and to deprive the plaintiff of a two-thirds interest in her property", said defendants did not acquire an unimpeachable title by the conveyances from the corporations. Furthermore, the plaintiff, an alleged stockholder, did not validly consent to or knowingly ratify such conveyances and proceedings were not taken as required by law for dissolution or distribution of assets of the corporations. Consequently, the transfer of title by the corporations is not sustainable on the theory, as suggested in the minority opinion, that such transfer "in practical effect, is merely a dissolution of the corporations and a division of their properties to the interests represented by the stockholdings." Nunez, J., concurs in the following memorandum: I concur in the memorandum for affirmance. As stated in the dissenting opinion, the "daughter proposed that the mother put certain property, more particularly two pieces of real estate, in corporate ownership so that they could not

be subjected to any liability of the business." The property was not transferred to make a gift to the defendants. The transfer was intended for the sole purpose of protecting plaintiff. After the mother, who is now over 70 years of age, became practically an invalid physically and mentally following a serious accident, defendant daughter and her husband deeded the two properties from corporate ownership to themselves and to the plaintiff in equal shares. The dissenting opinion states that "the corporations deeded the two properties to the mother, the daughter, and the latter's husband, as tenants in common." It fails to state that this was done by the daughter and her husband without the knowledge or consent of the mother. In my opinion the Trial Judge arrived at the only possible result after a full trial before him. While he may not have had the benefit of the personal appearance of the plaintiff, he did see the defendants and most of their witnesses and apparently he did not credit their testimony. As I view the record it presents nothing but an attempt by a grasping daughter to take advantage of her aged and ailing mother at a time when the mother most needed the support, love and affection of her daughter. Incidentally, no one has suggested any reason why the mother should make a gift of one-third ownership in these two pieces of real estate to her son-in-law to the exclusion of her son. The record clearly establishes an abuse by the daughter and her husband of their confidential relationship with the mother at a time when she was incapacitated. The defendants have completely failed to meet their burden of proving a valid gift, and any disposition other than affirmance of the judgment appealed from would be a miscarriage of justice. Concur — Stevens, P. J., Eager and Nunez, JJ.; Steuer and Markewich, JJ., dissent in the following memorandum by Steuer, J. This case presents most of the more unpalatable features which have made intra-family litigation so repellent. The family consists of a widowed mother (plaintiff), a son (not a party), and a married daughter and her husband (defendants). For some years the mother carried on a dental supply business founded by her deceased husband. For a time she had the doubtful assistance of the son. The testimony of four disinterested witnesses describes his participation in the business in less than complimentary terms. The daughter and her husband from time to time assisted the business with loans as needed. The son proposed that the mother lease a certain property. The daughter deemed this proposed lease so onerous and fraught with potential liability to the tenant that she feared the mother's financial security to be in serious jeopardy. She spoke to her mother and the mother consulted her lawyer. Concededly the lawyer had also represented the daughter and her husband on occasion, but he had for years been the mother's attorney. The daughter proposed that the mother put certain property, more particularly two pieces of real estate, in corporate ownership so that they could not be subjected to any liability of the business. Following a conference with the parties, the lawyer formed two corporations the stock of each of which was issued in one-third shares to the mother, the daughter and the son-in-law. The properties were deeded to those corporations. The son, finding this an unwarranted interference with his participation in his mother's business, quit and departed the scene. About six months later the mother was severely injured in an automobile accident. As a result of the accident, the mother was confined to a hospital and nursing home for an extended period. She suffered permanent effects, including a material diminution in her powers of recall. The accident was the subject of a lawsuit which resulted in a substantial settlement. During the period of the mother's complete incapacity, her affairs were managed by her daughter. This included whatever business the realty corporations had. Shortly after the deposit of the money received on the settlement,

the son reappeared on the scene and became his mother's guide and confidant. The first development was a withdrawal from the bank of $25,000 of the settlement money. To what end does not appear. Shortly thereafter the corporations deeded the two properties to the mother, the daughter, and the latter's husband, as tenants in common. The action seeks a cancellation of the deeds to the properties executed by the mother to the two corporations and to impress a trust in favor of the mother on the shares of stock held by the daughter and her husband. In our opinion the plaintiff failed completely to make out a case. It is argued that the original transaction by which the properties were put under corporate ownership and two thirds of the stock given to the defendant does not constitute a gift because there was no present delivery. Obviously an undivided interest in real estate is not a chattel or an evidence of debt such as a bank book. It is not capable of delivery. A sufficient reason for putting the ownership of the properties in corporate form was shown. What other way was there of making manual delivery of the interest intended to be conveyed than by issuance of the stock in the name of the donees? In fact, the contention of the plaintiff (really the theory of her case as propounded by her counsel, because she herself has neither theory nor contention) is that she was defrauded into making what amounted to manual delivery. This claim rests on her unsupported testimony. This testimony was not given in open court where she would at least have been subject to the court's scrutiny, but in the more shielded circumstances of an examination before trial. The testimony is, furthermore, of an individual who, by the admissions of her own physician, has had her memory for the period as to which she was testifying impaired almost to the point of destruction. It is replete with negation of facts established by documents, contradictions of disinterested witnesses, and inherent improbability. In our opinion, it cannot substantiate a claim, nor contest defendants' title. The transfer of title by the corporations, in practical effect, is merely a dissolution of the corporations and a division of their properties to the interests represented by the stockholdings. This transaction in no way influences the rights of any of the parties in suit. They stood in exactly the same relative situation in regard to the realty as they did before. The complaint should have been dismissed. Markewich, J., concurs.